# Wheeling.

## CYRUS HALL *vs.* J. O. PIERCE, *et. al.*

### January Term, 1870.

1. A case in which the relation of principal and agent is held to exist.

2. H. sells to the agent of P. a certain quantity of petroleum oil at twelve cents per gallon, to be delivered at a certain place at a certain time. H. delivers the oil as agreed upon, but the agent refuses to accept and receive it. P. being a non-resident, H. brings a suit in chancery and attaches the oil and certain moneys of P. in bank, and asks in his bill that the oil be sold and the money in bank be applied to the payment of his debt for the whole value of the oil at the stipulated price of twelve cents per gallon. The oil is sold *pendente lite.* The court below dismissed the bill with costs. HELD:

    1. That there was an irregularity in the proceeding so far as it assumed that the title to the oil was in P., the contract being only executory; and upon the refusal of the agent to accept and receive the oil, the title thereto remained in H., and his measure of damages was the difference between the contract price and the actual value at the time of delivery.

    2. As it does not appear that there was any unfairness in the sale of the oil under the order of the court, the irregularity cannot be of any consequence.

    3. Whenever the object of a bill is to recover money for any debt, or on the breach of any contract, or on account of any other matter, and it is shown that the complainant is entitled to any sum on account of the particular matters and transactions alleged in the bill, though it may be on other grounds, and for different reasons, and for a less amount than is alleged and claimed in the bill, the amount to which the complainant may be so entitled, may be decreed him under the prayer of general relief in the bill.

    4. H. is entitled to recover the difference between the contract price and the fair value of the oil at the time of delivery, which is shown to be eight cents per gallon.

The summons in this cause was brought to January rules, 1868, in the circuit court of Wood county. The suit was in equity, the defendant Pierce being a non-resident, and an attachment was issued. The final decree was entered at the June term, 1868, dismissing the bill.

A sufficient statement of the points arising in the cause appears in the opinion of Judge Berkshire.

*Lee* and *Hutchinson* for the appellant.
*Edmiston* and *Sands* for the appellees.

BERKSHIRE, J. On the 16th of October, 1867, the appellant, by a written contract of that date, sold and agreed to deliver to J. Bayless, as agent for the appellee, J. O. Pierce, 2,000 barrels of Burning Spring crude oil, to be delivered in bulk on first water at Parkersburg, at twelve cents per gallon; and the said Bayless, as agent, agreed to advance to the said Hall two thousand dollars for the purchase money for said oil.

It appears that in pursuance of this contract, as it is claimed, the appellant some time afterwards delivered and had at Parkersburg and the immediate vicinity, in the Little Kanawha river, upwards of two thousand barrels, in bulk, of Burning Spring oil, which he insisted on said Bayless, as the agent of Pierce, accepting in fulfillment of the said contract, which, however, Bayless declined to do, and refused to receive the same, and thereupon this suit was instituted.

The bill alleges the contract with Bayless, as agent of Pierce; the fulfillment of it, on the part of the complainant, by the delivery of the oil at Parkersburg, on first water, to Bayless, as agent of Pierce, and the refusal of the latter to pay for said oil 9,600 dollars; and that Pierce is a non-resident of the State; and an attachment was sued out and levied on the oil so delivered, as the property of Pierce; and the National Bank of Parkersburg, which is alleged to be the debtor of Pierce, is also made a party defendant.

The bill prays, that the property levied on be decreed to be sold and the proceeds applied towards the payment of the complainant's demand, and that the bank be required to pay over to the complainant the amount it may be indebted to Pierce; and there also is a prayer for general relief.

The answer of Pierce denies the agency and authority of Bayless to make the contract entered into, which resulted in this controversy, or to make any contract with the complainant at the time of said contract, for the delivery of the said oil; also denies that the appellee agreed, through his agent, to pay the sum of two thousand dollars, or any sum, in payment of said oil; also the delivery of the two thousand barrels of oil at Parkersburg, or any quantity whatever, to the appellee or his agent; and it is also claimed that, on the face, and by the terms of said contract, Bayless alone, and not the appellee, is bound by it; and it is further averred that the contract was never, in fact, fully executed, or delivered for the purpose of being a binding contract between the parties.

Numerous depositions were taken in the cause, which, however, I shall not advert to in detail; and the cause being heard on the merits, a final decree was entered dismissing the complainant's bill with costs. It is of this decree that complaint is made here.

I will consider the questions in the cause in their natural order.

The first, necessarily, is the *authority* of Bayless to make the contract with the appellant, now in question.

The first evidence of the agency of Bayless found in the record, is the letter or instructions, in writing, of the appellee Pierce, to the national bank of Parkersburg, of the 10th of September, 1867. It is as follows:

"St. Louis, September 10th, 1867. Cashier Old Parkersburg Nat. Bank, enclosed you will find draft on New York for eight thousand dollars for the use of J. Bayless. He is authorized to use the same, as follows: to put up 1

dollar per barrel margin, on the six thousand barrels of oil, bought for delivery, by first water, provided the other party put up the same amount in cash, not otherwise, or to use the money for the purchase of oil on the spot, whenever there is water to load the barge."

The power conferred on Bayless by this instrument, it is seen, restricts him in the purchase of the oil to two modes. He was authorized to make purchases *at once*, upon condition that the sellers would put up one dollar margin or forfeit on each barrel, as Bayless was also authorized to do, but not otherwise; or he was to *wait* until a freshet occurred and *then* purchase the oil on the spot.

I think it is clearly implied from this paper, that Bayless was the recognized agent of Pierce for the purchase of oil in that section of country, and being held out to the world as such, it might be a question how far those who might deal with him as such agent in making sales of oil would be affected by these private instructions of his principal to the bank at Parkersburg, but on this point I express no opinion, as the view I entertain of the cause renders it unnecessary to consider the question.

On the 27th of September, 1867, Pierce sent to the same bank at Parkersburg further instructions in writing, in reference to the purchase of oil to be made by Bayless, which materially modified the first. The latter writing is in these words :

" St. Louis, September 27th, 1867. Cashier Parkersburg Nat. Bank: You are authorized to let Mr. Bayless use the money I have in your bank, 8,000 dollars, to pay for oil delivered aboard the barge Minnie, and he is authorized to draw on me at sight for sufficient to complete loading the barge Minnie, as I wish her out as soon as possible."

It was evidently under this instruction that the contract was made with the appellant, and the material question now is, whether it conferred the authority on Bayless to make it.

These two papers are in *pari materia*, and must be taken together in giving construction to the latter.

By the first, it is clear that Pierce was not *then* unwilling to take the hazards of the market in making immediate purchases through his agent, and as an evidence of this, he proposed to risk 1 dollar per barrel as a forfeit, in the event that oil should fall in price, before the time of delivery, provided the seller would risk the same amount in case it should advance.

It does not appear, however, that Bayless was able to procure any such contracts or purchases, and this fact probably having been made known to Pierce, occasioned the latter direction, whereby it was intended, in my judgment, to remove the restrictions of the *first* direction so far as it required the margin of one dollar per barrel, as a *condition precedent* to the making of immediate purchases, and to authorize his agent to proceed at once to make the purchases of the oil, to be delivered on first water, so that the wishes of the principal expressed, in his last instruction, might be carried out in getting "the barge Minnie out as soon as possible." I think, therefore, that the last letter or direction of the appellee to the bank at Parkersburg, construed in connection with the first, clearly conferred the authority on Bayless to make the contract in question. The next question in the order, is, as to the delivery of the oil by the appellant, pursuant to the contract.

From the evidence in the cause, I think it very satisfactorily appears, that the appellant had the quantity of oil sold, and even more, in bulk, at Parkersburg, on the first water after the contract, ready to deliver, and that he fully complied with his contract in this respect, by tendering the oil to Bayless, as the agent of Pierce. It appears, however, that Bayless refused to accept or receive the oil, and that the appellant, thereafter treating the contract as an *executed* contract, and the title to the oil as vested in the vendee, Pierce, had his attachment levied on it as the property of the latter, under which it was sold by order of the court

*pendente lite*, and purchased by the appellant at seven cents per gallon.

In my view, there was some irregularity in this respect, in so far as it was assumed that the *title* to the oil, under the evidence in the record, was in Pierce. The contract, I think, was executory only, and the consequence was that the *title* to the oil, upon the refusal of Bayless to receive and accept it, remained in the appellant, and that consequently, the measure of his damages was the difference between the contract price and the actual value of the oil at the time of delivery. It clearly results from all the authorities that, in the case of a sale of personal property, not present, nor seen and inspected by the purchaser, or not then in existence, to be delivered in the future, the law implies that the articles sold shall be *merchantable*, and that, until they are delivered *and accepted*, the title remains in the vendor, and the measure of the damages, upon a refusal of the vendee to *receive* them, is the difference between the contract price and their real value at the time and place of the delivery. *Weltners* v. *Riggs*, 3 W. Va. Rep., 445.

But as it is not pretended that the sale of the oil was unfair, or that any loss resulted to the appellee from such sale, the irregularities just adverted to can be of no consequence, especially as the appellant, if entitled to relief, can only recover what is shown by the evidence to have been the difference between the contract price, twelve cents, and the fair value of the oil at the time he delivered it on the 16th of December, 1867, at Parkersburg.

It was claimed on behalf of the appellee, that the appellant in fact abandoned the contract after it was entered into, and by his own acts and conduct absolved the appellee from all liability on account of it; but this conclusion, in my judgment, is not warranted by any fair and just deductions from the evidence in the cause.

The remaining question to be considered, is the question of the relief to which the appellant may be entitled under the pleading and proofs disclosed by the record.

It was earnestly and ably maintained that the appellant could, in no event, be entitled to any relief in the case, for the reason that the bill proceeded on the ground, and so alleged, that the contract was an executed contract, and claimed a debt of 9,600 dollars, the contract price of the oil sold and *delivered,* whereas, the evidence shows *at most* only an executory contract, and that the appellant was only entitled to recover unliquidated *damages* for the breach thereof; and that, inasmuch as the contract proved was wholly different from the one alleged in the bill, the appellant could not recover or be entitled to any relief in the premises in this suit. In this view I cannot concur.

The appellee was a non-resident, and the court, therefore, had jurisdiction by foreign attachment to enforce the demand of the appellant against him.

The bill, it is true, claims that the contract was executed, and seeks to recover the contract price of the oil; but there is also a prayer for *general* relief, which, I think, fully comprehends the case, and would justify a decree for any amount to which the appellant has shown himself entitled, on account of the contract in controversy.

This, I conceive, would not be making a new case wholly different from the one set out in the bill, as in the case of *Brown* v. *Wiley,* relied on by the appellee, but the relief thus given under the general prayer, though for a less amount than is claimed in the bill, would *pro tanto* at least, be in strict harmony with the special prayer of the bill.

The correct rule, in reference to the effect of the prayer for general relief, I take to be, that whenever the object of the bill is to recover money for any debt, or on the breach of any contract, or on account of any other mater, and, it is shown that the complainant is entitled to any sum on account of the particular matters and transactions alleged in the bill, though it may be on other grounds, and for different reasons, and for a less amount than is alleged and claimed in the bill, the amount to which the claimant may be so entitled, may be decreed to him under the general prayer for

relief, if there be such prayer in the bill. *Bank of Washington* v. *Arthur, et. als.*, 3 Grat.,173.

Upon the whole case, I think the appellant has shown himself entitled to recover from the appellee the difference between the contract price of the 2,000 barrels of oil, and the fair value of the same, at Parkersburg on the 16th of December, 1867, which, I think the evidence shows, was eight cents per gallon, and that it was proper, under the pleadings and evidence to decree him that amount. I am of opinion, therefore, that the decree will have to be reversed, with costs to the appellant here, and the cause remanded to the circuit court for further proceedings to be had in accordance with the principles of this opinion.

The other judges concurred.

Decree reversed.