# CASES DETERMINED

## IN THE

# SUPREME COURT OF APPEALS

## OF WEST VIRGINIA.

AT THE SPECIAL TERM THEREOF, HELD AT WHEELING
IN THE COUNTY OF OHIO, COMMENCING
ON THE TWELFTH DAY OF OCTOBER,
1878, AND ENDING ON THE
TWENTY-FIRST DAY OF
DECEMBER,
1878.

## BOYD & CO. v. GUNNISON & CO.

### Decided November 9, 1878.

| 14 | 1 |
|----|----|
| 36 | 466 |
| 14 | 1 |
| 38 | 677 |
| 14 | 1 |
| 44 | 157 |
| 14 | 1 |
| 47 | 281 |
| 14 | 1 |
| 48 | 465 |
| 48 | 579 |
| 48 | 651 |
| 48 | 662 |

1878
Special Term.

| 14 | 1 |
|----|----|
| 53 | 205 |
| 14 | 1 |
| 55 | 589 |
| 14 | 1 |
| f64 | 387 |

1. Where a contract for the sale of personal property names several places, at which said property may be delivered, at the buyer's option, the buyer must within a reasonable time make his selection of the place of delivery.

2. If nothing is said in the contract as to the time of delivery of personal property, the delivery must be made in a reasonable time.

3. A contract is made on the 30th of March, 1868, for the sale of two thousand barrels of oil; the contract gives the buyer the right to select one of three places mentioned in the contract for the delivery of the oil; and on the 9th of April, 1868, the buyer selects the city of New York, one of the places mentioned in the contract, as the place of delivery. The selection under the circumstances of this case was made in a reasonable time.

4. The oil had to be transported from White Oak, West Virginia, to New York; and from the commissioner's report it would reasonably take from the 9th of April, 1868, to the 26th of the same month to deliver the oil in New York city. There being no time specified in the contract for the delivery of the oil; and the law requiring it to be delivered in a reasonable time; HELD:

That under the circumstances of this case, the 26th of April, 1868, was the *time*, when the oil should have been delivered under the contract.

5. The general rule is, that the proper measure of damages for the breach of executory contracts for the sale and delivery of personal property is the difference between the contract price and the market value of the article, at the *time* when and *place* where, it should have been delivered.

6. Where no time is fixed in the contract for the delivery of the oil, the buyer cannot, without the consent of the seller, extend the delivery of any part of the oil beyond a reasonable time.

7. Where questions of fact are submitted to a commissioner in chancery, his findings upon such facts should be sustained, unless the court is satisfied from the evidence before the commissioner, that such findings are erroneous, though such report is not entitled to the same weight as the verdict of a jury.

8. A case, in which there was a report of commissioner finding the difference between the contract price of oil sold, and the market value of the oil when it should have been delivered, at *six cents* per gallon; and the court below, reformed the report by reducing such difference to *three cents* per gallon, and while this court decided, that the basis, on which the commissioner proceeded, was wrong, and the court below may have also proceeded on a wrong basis in ascertaining such difference, yet the presumption being in favor of the correctness of the decree, this court affirmed it, because it could not, after looking into the whole evidence upon the correct basis, say, that the decree was not justified by the evidence.

9. In ascertaining what is the market value of personal property on the day of delivery at a certain place, it is proper to hear evidence of the market value thereof within a reasonable time both before and after such day.

Appeal from and *supersedeas* to a judgment of the circuit court of Wood county, rendered on the 3d day of August, 1875, in a cause in chancery, in said court then pending, wherein William H. Boyd & Co. were

plaintiffs, and Austin Gunnison & Co. were defendants, granted on the petition of said defendants.

Hon. James M. Jackson, judge of the fifth judicial circuit, rendered the judgment appealed from.

JOHNSON, JUDGE, furnishes the following statement of the case:

At July rules, 1868, the plaintiffs filed their bill, in the circuit court of Wood county, against the defendants, setting up a contract for the sale of oil, and a breach thereof. The jurisdiction of the court was obtained under the statute, permitting a suit in equity upon an attachment against non-resident defendants having effects in the county, where the suit is brought. The defendants to the bill were non-residents. The bill alleges, that the plaintiffs were dealers in oils, &c., as were also the defendants; that they applied to the agent, E. Conner, of defendants residing in New York, to purchase some oil, and entered into a written contract with the said defendants through such agent as follows:

"NEW YORK, March 30, 1868.

"*This is to certify*, That I have sold to William H· Boyd & Co., 132 Front street, New York, for account of A Gunnison & Co. of Cincinnati, Ohio, two thousand (2,000.) barrels of West Virginia lubricating oil, like sample, at ten and one-half (10½) cents per gallon, delivered in tank along side of the Laurel Fork and Sand Hill R. R., at White Oak, in West Virginia; or in tank at Parkersburg, at thirteen (13) cents per gallon; or at the B. & O. R. R. Co. wharf in Baltimore, at twenty-two (22) cents per gallon in barrels, in good merchantable order; or in suitable oil-yard, known as New York, at twenty-four (24) cents per gallon, in like good order. Terms cash on delivery; the delivery at either of the above points at the buyer's option.      "E. CONNER,
            "*For A. Gunnison & Co., Cin., Ohio.*

"Accepted March 30, 1868.
            "WILLIAM H. BOYD & CO.,
            "*By William H. Smith, Attorney.*"

That it was the purpose of plaintiffs in entering into said contract, to perform their part of it in good faith, that the price, agreed to be paid for said oil at the several points named, was regulated by the then state of the oil market, and by the difference in the cost of transportation, according to the distance from the oil works in West Virginia; that plaintiffs notified said defendants, that they had chosen a suitable oil-yard known as New York, in New York, as the place of delivery for said two thousand barrels of oil ; and that the plaintiffs were there at the said place ready and willing to pay for the said oil at the rate of twenty-four (24) cents per gallon, when delivered in good order; that although they notified the said A. Gunnison & Co., that they had chosen New York, as the place of delivery for said oil, and that they were ready to pay cash for it, yet the said defendants, within a reasonable time after the date of said contract, and the notice of said option in favor of said oil-yard in New York, failed and refused to deliver the said two thousand barrels of oil. They charge, that E. Conner was the agent of said defendants, and authorized to make said contract, and that, by reason of the neglect and failure of defendants to deliver said oil, plaintiffs had suffered damage to the amount of $8,000.00 in loss of profits, &c. That at the time said oil should have been delivered, the oil market was good; and by the failure to deliver said oil at the place of delivery, and at the time of delivery, they sustained the damage aforesaid ; and they refused to comply with their contract. Then follows the necessary allegation as the foundation of an attachment. The bill concludes with a prayer, that $8,000.00 damages be decreed to be paid to them by the said defendants ; and for general relief.

The defendants filed their answer, in which they admit, that E. Conner was their agent, and that he was authorized to make the contract set up in the bill; but say, that they were surprised on receipt of a copy of that

1878
Special Term

Boyd & Co.
v,
Gunnison & Co.

contract, on the 1st of April, to find, that no time was fixed for the delivery of said oil, and that they immediately by telegraph to their agent required him to notify plaintiffs, to fix a time and place of delivery; that they are informed and believe, that this said agent made an effort to find the complainants, that he might require them to fix a time and place of complying with said agreement; that said agent not being able to find complainants, and a reasonable time having elapsed since the making of said contract, and no demand having been made upon respondents, or their agent, by complainants to comply with the same, respondents notified said agent to notify complainants, that they would not deliver said oil, and should regard said contract as void.

Respondents say, that by reason of the failure of complainants to fix a time and place for delivery of said oil, they cannot call upon respondents to answer in damages, for non-compliance with the terms of said contract. They deny, that a demand was made upon them within a reasonable time; and they charge, that complainants did not in good faith enter into said contract; but intended, as they are informed and believe, if there was an advance in oil, to require respondents to comply with said contract; but if there should be a decline, to not require the oil to be delivered. Respondents deny, that complainants have sustained any damage; and pray to be hence dismissed, &c.

To the answer the plaintiffs replied generally. The deposition of A. Gunnison, one of the firm of A. Gunnison & Co., is taken, in which he swears to substantially what he sets up in the answer. In it he says, he did make the demand, and that respondents did demand, that plaintiffs fix the time and place for the delivery of the oil. The telegram referred to is as follows:

"CINCINNATI, April 1, 1868.
"To E. Conner, 197 Pearl St., New York:

"Purchasers must select place of delivery; we must be conferred with as to time. A. GUNNISON & Co."

And the other exhibit filed with his deposition is:

"CINCINNATI, April 10, 1868.

"Can't wait longer for decision—Boyd & Co., decline order."

Among the letters of E. Conner, sent to his principals, is one dated April 6, 1868, in which he says: "Your telegram of the 3d inst., and letter of the 1st were both received. As soon as the party, to whom I sold, returns, I will get a definite time and place for delivery, which I think I can make to suit your views; they may want, a part of it delivered at a time—say thirty days—and the balance some time afterward. I will get the *time* definite and submit it to you; I think I can make it suit all round."

In a letter dated New York, April 11, 1868, he says to A. Gunnison & Co.: "I received your telegram last night of the 10th inst., and noted the contents, I received day before yesterday from Boyd & Co., the definite instructions on the delivery of the oil, and sent it immediately to you. So you see, they will expect the oil as per contract. Now I want to know about selling more oil, and the price. I can sell at the old price; but don't know, or think, I can sell for any higher, but will, if I can. I notified Boyd & Co. on receipt of yours of the 4th of April, that you were shipping the oil to New York. From what I had written to you, you had concluded the oil would come here. As I said in my last, I think the best way to have it come, to suit the parties here, would be to F. W. Gunn & Co.'s yard at commission, *via* Allentown route."

Another letter, written by E. Conner to his principals, A. Gunnison & Co., dated New York, April 14th, 1868, contains the following language: "Yours of the 10th was received yesterday; and I notified Boyd & Co., that you would not fill their order for oil, because they had not decided more promptly on the plan of delivery; and that you suppose the delay was in consequence of their being interested in getting a corner in oil. They

positively declare, they have nothing to do with anything of the sort; and they bought it for their trade ; and that they had sold it, and should insist on the delivery of the two thousand barrels of oil, as you prefer, all immediately or as they proposed in my last letter, . viz ; five hundred barrels immediately, and five hundred barrels in ten or twenty days after the first, and one thousand in thirty days after the first. This will suit them, if it suits you; or they are prepared to receive the whole immediately. Now this is the state of the case. *You say in your letter of April* 4 : 'We have from your letter concluded the oil is to be delivered in New York, and have made arrangements accordingly.' On the strength of this I told Boyd & Co., that you were shipping the oil to New York and they must be prepared to receive it, and pay for it ; then they said : 'We will tell them how it will suit us; and perhaps it will answer their purpose just as well ; but we will take it all now, if they send it.' Hence the letter directing me to have it delivered in New York. The time elapsed is accounted for as you will see."

On the 18th of April, 1868, at New York, the said Conner wrote another letter to the said A. Gunnison & Co. in which he says : "Yours of the 13th is received and contents noted. My last letter to you partly answers yours of the 13th, as I copied extracts from yours of the 4th of April. I have shown to parties only your letter authorizing me to sell the two thousand barrels of oil. Your correspondence with me is none of their business ; and of course I didn't show it to them. I was in hopes my last letter to you, with the *time* of delivery they wished, would suit you, and obviate your difficulty in the delivery. So far as the rise in price is concerned in the market, I belive all *humbug*; by whatever cause the price has been advanced, when that cause is removed, or "played out," the oil, in my opinion, will go lower than it was before."

On the 22d of April, 1868, the said Conner wrote another letter from New York, to his said principals, in

which he says : "Inclosed please find letter from William H. Boyd & Co. to me in regard to the two thousand barrels of oil. Now I feel very anxious to have this matter fixed up, and the oil delivered, so that I am not blamed, &c."

The following is the notice filed with E. Conner agent :

"April 9, 1868.

"E. CONNER, ESQ.,

"*Dear Sir :—* Agreeable to the contract for the sale and purchase of two thousand (2000) barrels of lubricating oil from Messrs. A. Gunnison & Co., Cincinnati, we beg to give you notice, that we will require the whole lot, as purchased, to be delivered in commission yard, New York, at as early a day as you can ; but as we do not really require the entire parcel at the moment, it will suit us better for you to ship five hundred barrels as soon as possible, five hundred barrels in ten or twenty days thereafter. We hope three different shipments, will be quite satisfactory and come promptly.

" WM. H. BOYD & CO.,
" *Per Wm. H. Smith.*"

On the 23d of April, 1868, said Boyd & Co., by W. H. Smith, wrote an urgent letter to E. Conner, in which they say : " Referring you to our letter of the 9th inst., giving you notice as to the delivery of the two thousand barrels of lubricating oil, as per contract with Messrs. A. Gunnison & Co., we now write to say, that we hope the oil will come forward as rapidly as possible. Our requirements are such, as to make it necessary for us to insist upon a prompt shipment ; and we shall hold you and your principals responsible for all damages arising from any delay in forwarding the oil as per contract. If you will instruct your firm to ship the oil *via* Allentown route to the commission yard, you will oblige, &c."

Conner was examined by the plaintiffs ; and on cross-examination he was asked the question, by counsel for defendants : " Did defendants repeatedly during the in-

terval of making the contract, and the said 10th day of April, make any response, and what, as to show willingness, and anxiety to fulfill their part of the contract, if the plaintiffs would elect, where the oil was to be delivered, so they could do it; and did you not at that time frequently urge said Boyd & Co., or Smith their agent, to fix the time and place?" To which he gives this vague and indefinite answer: "They did answer, and insisted on the *place* of delivery being given to the defendants; I urged Smith, the agent of Boyd & Co., to fix the place."

On the 19th day of October, 1868, the cause was referred to a master commissioner, W. W. Van Winkle, with directions to report the number of barrels of oil contracted to be sold; the price agreed to be paid by complainants at the oil yard in New York city upon delivery; the time when the defendants were notified of the place of delivery; the value of the oil at that time and place; the difference between the contract price and the price between the date of the contract, and the time when the option was declared; and between that time and the 1st of January, 1869; and what damages the plaintiffs have sustained by reason of the non-compliance with the contract; and any other matter deemed pertinent by himself, or any party in interest.

The commissioner reports the following facts:

1. Number of barrels sold: two thousand.

2. The price agreed to be paid in New York: 25 cents per gallon upon delivery.

3. That complainants notified the defendants of the place of delivery, * * * on the 9th day of April, 1868, within a reasonable time after making the contract, directing said oil to be delivered as follows: "five hundred barrels as soon as possible, five hundred in ten or twenty days after the above was shipped, and one thousand barrels in thirty days thereafter." Which notice was given previous to defendant's telegram purporting

to rescind the contract, this fact sufficiently appears by the letters of E. Conner to the defendants, and produced in evidence by the defendants; according to the bulk of the evidence the first shipment should have reasonably reached New York about the 26th day of April, 1868; the next about the 6th to the 10th day of June, 1868.

4. That according to the best evidence the price of such oil on the 10th day of April, 1868, at New York, was from 25 cents to 26 cents per gallon.

5. The evidence *pro* and *con* is rendered with reference to the price of oil by the gallon instead of by the barrel. In order therefore to ascertain the barrel price, both as to the contract selling price, and the market price, the two thousand barrels were reduced according to the evidence and legal rule to eighty thousand gallons, allowing forty gallons to the barrel.

6. The evidence did not enable the commissioner to report the difference in the price between the 9th day of April, 1868, and the first day of January, 1869, because it only embraces the time between the 30th day of March, 1868, the date of the contract, and the 6th day of June, 1868, the time when the last oil should have been delivered in New York. While he finds the evidence somewhat vague and uncertain as to the market price between the last named date at New York, he was of opinion, with the qualification before stated, that the preponderant and most certain evidence is adduced by the plaintiffs; and that the difference between the contract price, (24 cts), and market price (30 cts), which he finds is a fact, is six cents per gallon.

7. The evidence seems to have been taken on the theory, that the measure of damages, if any, should be ascertained by the difference between the contract price and the market price at the date of the contract. Commissioner was of the opinion, that the correct rule is the difference between the *contract price* and the *market price* at the time and place of delivery. With this view he says

"I have already found, that on every one of the dates where delivery should be made the market price is 30 cents per gallon," and that eighty thousand gallons at 30 cents is $24,000.00. Deduct value of eighty thousand gallons at contract price, 24 cents, $19,200.00. Damage to complainant $4,800.00. If the time is fixed on the 16th day of April, 1868, he finds the market price on that day to be eighty thousand gallons at 25 cents per gallon $20,000.00. Deduct eighty thousand at 24 cents per gallon $19,200.00. Damages to complainant $800.00.

8. The qualification referred to in the sixth paragraph is, that the sales made of oil by the complainants between the times indicated, is the only criterion and standard for their testimony fixing the market price at New York as high as 30 cents per gallon; and it is uncertain, whether this was their "globe brand" or not. If it was that brand he was satisfied, that such brand of oil commanded a better price than others, and accordingly 30 cents would be too high and the correct amount of damages would be $800.00.

The defendants excepted to the report; and the substance of the exception is as follows:

1. Under the evidence the plaintiffs were not entitled to any damages.

2. The master should from the evidence have fixed the price of oil on the 9th day of April, 1868, as the evidence and exhibits show, that on that day the defendants refused to deliver the oil, and that the price of such oil, as was sold by the contract, was on that day worth only 24 cents.

3. That the master does not find, how he ascertained the price of oil, nor when he fixes the price of the same, as required by the reference.

4. He finds that the oil was to be delivered in New York, but does not find how it was to be delivered there; nor does the contract state, whether in barrel, tank, cars, or in any other measure, as directed.

5. The master does not show the price of oil, where produced, on the 9th or 10th days of April, 1868, and what the cost of transportation would be to New York oil-yards, so as in that way to ascertain the price of oil on that day in New York.

6. From the evidence and exhibits the finding should have been for the defendants.

On the 3d day of August, 1875, the decree complained of was rendered in the cause. The cause came on to be heard upon the bill and exhibits, the answer of the defendants with general replication thereto, on the depositions and proofs taken in the cause, on the order made and attachment levied, and the report of master commissioner W. W. Van Winkle, with exceptions taken thereto, and was argued by counsel. "On consideration whereof the court is of opinion, that the plaintiffs are entitled to the relief prayed for; but the court is further of opinion, that the exceptions to the said commissioner's report, as to the difference between the contract price of said oil and the market price of the said oil at the place of delivery and the time thereof fixed by him, as the basis of estimating the measure of the damages due the plaintiffs at six cents per gallon, is well taken; and the said exception is therefore sustained. But as the court is enabled from the evidence and papers in the cause, without recommitting the said report in that particular, to ascertain the true difference between the said contract price of said oil, and the market price thereof at the place and time of delivery, under the contract in the bill mentioned, the court is further of opinion, that the market price of said oil at the time and place of delivery, as found by the said commissioner, was twenty-seven cents per gallon, being in the opinion of the court, the average price fairly deduced from the evidence, and that the said true difference between the said price of said oil as aforesaid was three cents per gallon; and the said master's report is in that respect reformed, and being so reformed is in all respects confirmed." It proceeds to decree, that

the defendants pay to the plaintiffs the sum of $2,400.00 with interest thereon from the 1st day of July, 1868, and the costs of the suit; and continued the questions arising upon the attachment.

1878
Special Term

Boyd & Co.
v.
Gunnison & Co.

There is much evidence in the cause as to the price of oil at the different times. The evidence is overwhelming, that from about the 1st of April the tendency of oil was upward. There is much conflict in the evidence.

An appeal from and *supersedeas* to said decree, was allowed.

*William B. Loomis,* for appellants, cited the following authorities :

16 Md. 220 ; Sedg. on Meas. of Dam. 260, and cases cited ; 12 Ohio St. 361 ; 2 Kernan (N. Y.) 40 ; 17 Gratt. 366 ; 30 Vt. 555 ; 18 Ill. 155 ; 33 Mo. 150 ; 7Gray 566 ; 1 Sweeney (N. Y.) 1490 ; 2 Dan. Ch. Pr. (4th ed.) 1298, n. 5.

*John A. Hutchinson,* for appellees, cited the following authorities :

3 Johns. Ch. 23 ; Benj. on Sales 305, 306 ; Sedg. on Meas. of Dam. 260 ; 3 M. & W. 445 ; 5 Md. 121 ; Benj. on Sales 505 ; 7 Gray 566 ; 2 Dan. Ch. Pr. (4th ed.) 1298 ; 21 Gratt. 215.

JOHNSON, JUDGE, delivered the opinion of the Court :

The first assignment of error is, that the court was not justified by the case made in granting any relief to the plaintiffs. This raises the question : Did the defendants by their telegram of the 10th April, 1868, rescind the contract?

By the terms of the contract plaintiffs were given the right to name one of the three places named in the contract for the delivery of the oil, as the place where such oil was to be delivered. And where a contract names several places, at any one of which personal prop-

Syllabus 1.

erty may be delivery, at the buyer's option, the buyer must within a reasonable time make his selection of the place.

Did the defendants within a reasonable time after making said contract designate the place, at which the oil should be delivered?

The commissioner reported, " that the complainants notified the defendants of the place of the delivery of said oil, according to the option of the complainants, on the 9th day of April, 1868. The contract was made on the 30th day of March, 1868. The letters, referred to in the statement of the case, were by the defendant Gunnison proved by E. Conner, their agent, to be in his handwriting and addressed to the defendants, and were made exhibits with the deposition of said Conner, at the request of the defendant Gunnison, who cross-examined the witness in person. In one of those letters dated April 14, 1868, Conner the agent of defendant writing the defendant says : "Now this is the state of the case, you say in your letter of April 4th, ' we have from your letters concluded the oil is to be delivered in New York and have made arrangements accordingly,' on the strength of this I told Boyd & Co., that you were shipping the oil to New York, and they must be prepared to receive it, and pay for it." It is very evident from this letter, that a very short time after the contract was made, Conner was notified by the plaintiffs, that they had elected to have the oil delivered in New York, and that Conner notified his principals of that fact; hence their letter on the subject as early as the 4th of April ; but the oil not coming, on the 9th of April a formal notice in writing of the *place* as well as of the time of delivery was given to Conner the agents of defendants.

Under all the circumstances of this case, if there was no formal notice given to the defendants until the 9th of April, it was reasonable ; and it was not in the power of the defendants to rescind the contract, as they attempted to do by the telegram of the 10th April. If the de-

fendants had been more diligent in demanding at once, that the place should be fixed, and the plaintiffs had declined to indicate, where the oil should be delivered, it might be, that the notice of the election of the place would have been deemed unreasonable. There is not a single communication on the subject from the defendants to the plaintiffs, excepting, that the place should be fixed, except the following telegram dated at Cincinnati on the 1st day of April, 1868, sent to E. Conner : "Purchaser must select place of delivery ; we must be conferred with as to time." There is nothing said even in this dispatch, that they demand, that the purchaser should *immediately* fix the place of delivery. They say, that as to the time of delivery they must be conferred with, but the place must be selected by the plaintiffs.

The defendants being notified on the 9th through their agent, and actually receiving the notice about the 10th of April, they would be entitled to a reasonable time thereafter to deliver the oil in New York, the place selected. If nothing is said in the contract as to time of delivery, the delivery must be made in a reasonable time. *Benjamin on Sales.*

Syllabus 2.

The commissioner's report, that the oil could reasonably have been delivered in New York on the 26th of April. From the evidence I have no reason to doubt the correctness of this finding of the commissioner ; and therefore on the 26th of April, 1868, in the city of New York, is the *time when,* and the place where, the oil should have been delivered under the contract.

Syllabus 1.

·· If damages were sustained by a breach of the contract, what was the measure of such damages ?

It could not be, as contended by the learned counsel for the appellants, the difference between the contract price and the market price, at the time the defendants *refuse* to perform, if by that is meant in this case on the 10th of April, when they sent the telegram to their agent, "can't wait longer for decision—Boyd & Co. de-

Syllabus 5.

1878
Special Term
—————————
Boyd & Co.
v.
Gunnison & Co.
cline order." *Williams* v. *Woods*, 16 Md. 220, is relied on to sustain the position of appellants' counsel. In that case, there was a sale of a lot of coffee; and very soon after the sale the seller refused to comply with the sale; and that court held, that "where in an action for the non-delivery of a lot of coffee the defendant refused on a certain day to ratify the sale and deliver the coffee, and the plaintiff at that time had not paid, or offered to pay, any part of the price, such a refusal constitutes a breach of the contract at that time; and the measure of damages is the difference, if any, between the price of a lot of coffee, of the same quality and quantity at the time of such breach, and the price, at which the same had been sold."

*Worthen* v. *Wilmot*, 30 Vt. 555 was an action for damages for failing to deliver corn according to contract. In the fall of 1854 the plaintiff bought a lot, two hundred bushels, of corn at $1.00 per bushel, to be delivered " at the defendants dwelling house at the first of sleighing, or within a convenient time thereafter. At the time the contract was made, the plaintiff paid defendant $25.00, earnest money, and was to pay the residue on delivery of the corn, or sooner if requested. Sleighing commenced that winter about the 1st of December. The defendant sent word to the plaintiff on the 9th of December, that he wished him to take his corn, as soon as he had drawn the corn of defendant's brother, which the plaintiff had also purchased, and was then drawing. On the 13th December, and before the plaintiff had drawn away all of the corn, which he had purchased of the defendant's brother, the defendant sold his corn to another party for $1.80 per bushel. The plaintiff went to the defendant's house on the 18th of December to draw away the corn, which he had purchased of the defendant, and demanded the corn, and tendered the defendant $175.00, the balance of the agreed price; but the defendant refused to deliver the corn. Corn commenced rising in price in December of that year, and

continued to rise until August, 1855, when it was worth in Thetford, where the defendant resided, $1.50 per bushel. On the 18th of December, 1854, it was worth in Thetford only $1.12½ per bushel; and on the 9th day of May, 1855, when the suit was tried, it was worth eight shillings per bushel. On the 16th day of December, 1854, the defendant sent $25.00 to the plaintiff's house, and left it with his wife, the plaintiff being absent, as the earnest money advanced by the plaintiff, when the contract was made.

The referees reported, that if the difference between the contract price and the market value of the corn on the day of the breach of the contract was to constitute the rule of damages, then the plaintiff was entitled to receive twenty-five dollars and interest thereon from the 18th of December, 1854; but that if on the other hand the rule of damages was the difference between the contract price and the highest market value between the time of delivery and the trial of the case, then the plaintiff was entitled to recover sixty-six dollars and sixty-six cents and interest thereon from the 18th day of December, 1854.

Upon these facts the court rendered judgment, that the plaintiff receive the difference between the contract price and the value of the corn on the day the case was tried and interest from that time.

In the Supreme Court, Aldis J., who delivered the opinion of the court, said: "The general rule is, that where the vendee has not paid for the goods in advance, the difference between the contract price and the market value at the time and place of the promised delivery, is the rule of damages. This goes upon the ground, that the injured party is thereby made whole; that he can take his money and go into the market and buy the articles, that were to have been delivered at their then market value; and that if he gets as much in damages from the vendor as the increase in price, which he is bound to pay on the purchase of the same property, he

3

is thereby secure against loss." The judgment was reversed.

In *Phelps* v. *McGee,,* 18 Ill, 155, it was held, that "where an article is to be delivered at a place certain, on or before a day named, without a prior demand, the breach can only occur on the day named; and the measure of damages, in case of a breach, will be the difference between the value of the article on the day and at the place named, and the contract price. A refusal to deliver upon a demand upon a day subsequent to that named in the contract, would not create a breach, but might be considered a waiver of the previous breach, and an acceptance might be held a satisfaction of the contract."

The authorities do not sustain the rule as apparently laid down in *Williams* v. *Woods*, 16 Md.

In Virginia the rule is as follows: The general rule is, that the proper measure of damages for the breach of executory contracts for the sale and delivery of personal property is the difference between the market value of the article at the time and place, when and where it should have been delivered, and the contract price. *Newbrough* v. *Walker*, 8 Gratt. 16.

The same is the rule in our own State. *Wiltner* v. *Riggs*, 3 W. Va. 445; *Hall* v. *Pierce et al.*, 4 W. Va. 107.

Syllabus 6.    The damages, that the plaintiffs are entitled to receive, if any, is the difference between the value of oil, of like quality to that they bought, in the market in the city of New York on the 26th day of April, 1868, the time when it should have been delivered, and the contract price. It is insisted by counsel for appellee, that the plaintiffs had the right to, and did, direct, that the oil should be received at different times in New York, extending to the 6th of June; and that the market value of the oil at all times from the 26th of April until the 6th of June should be taken into consideration, in fixing the amount of the plaintiffs' dam-

ages. There is no evidence in the record, that the de-<sup></sup>fendants agreed at any time to deliver the oil at these several times. In the letter of the 9th of April, notifying defendants of the place of delivery, the plaintiffs said, they would take it all immediately, or, in their own language, "at as early a day as you can;" * * * * "but as we do not really require the entire parcel at the moment, *it will suit us better* for you to ship five hundred barrels as soon as possible, five hundred barrels in ten or twenty days," &c. This was a mere favor they asked, which was never granted.

What damage, if any, did the plaintiffs sustain by reason of the breach of the contract? The commissioner reported, that the difference between the contract price and the value of the oil, at the time and place of delivery, was six cents per gallon, or $4,800.00.

Should the finding of the commissioner have been sustained? Where questions of fact are submitted to a commissioner in chancery, his findings upon such facts should be sustained, unless the court is satisfied from the evidence before the court that such findings are erroneous. *Izaid* v. *Bodine*, 1 Stock. 309; *Sinnickson* v. *Bruere, Id.* 669; *Merriam* v. *Baxter*, 14 Vt. 514; *Adams* v. *Brown*, 7 Cush. 222 *Reed* v. *Reed*, 10 Pick. 398; 2 Dan'l Ch. Pr. 1298.

The court reformed the report as to the amount of the difference between the contract price and the value of the oil, and fixed the difference at three cents per gallon instead of six. The commissioner was clearly wrong in fixing different times for the delivery of the oil, as there was but one time, when it should have been delivered, which we have ascertained to be the 26th of April, 1868. He however reports, that he had found, that "on every one of the dates, where delivery should be made, the market price is 30 cents per gallon." The court cut down this finding to 27 cents per gallon, making the difference between the market price and the contract price *three* instead of *six* cents, as found by the commissioner, and rendered a decree for the said difference amounting

to $2,400.00. Was the commissioner wrong, and was the court right?

We agree with the learned judge in his opinion, that the report of the commissioner, as to the six cents per gallon, was clearly erroneous; because he seems to have disregarded the defendants, testimony to a great extent at least. Keeping in view the fact, that the 26th day of April, 1868, was the time when, and New York city the place where, the oil should have been delivered, is the report of the commissioner, as reformed by the court and by it confirmed, sustained by the evidence? If it is, we see no reason for disturbing it. If it is not plainly erroneous, it ought not to be disturbed, because there ought to be an end of litigation. Before it is disturbed, it ought to appear from the record, that injustice has been done the appellants. I have very carefully examined the mass of testimony, conflicting as it is, to see if the decree of the court is sustained thereby, fixing, as I have, the 26th day of April as the time of the delivery. While it is hard from this conflicting mass of evidence to say precisely, what was the market value of oil, of the quality sold by appellants to appellee, on the said 26th day of April, yet I cannot say, that it was not as much as 27 cents per gallon, and that the difference therefore between the market price on that day and the contract price was not what the court said it was, *three* cents per gallon.

It is objected, that the evidence of the plaintiffs' witnesses referred to a certain brand of oil called the "globe brand," which was worth more in the market; but this is not clearly shown. The presumption of law is in favor of the decree of the court below; and I do not think, that presumption is overcome in this case; and the decree should be approved. *Hickman* v. *Painter et al.*, 11 W. Va. 386.

It is insisted by appellants' counsel, that the court erred in not recommitting said report, to state the difference in the price of oil, on the day of delivery, at

the different places of delivery mentioned in the con-
tract. That would have been an immaterial enquiry,
and could have thrown no light upon the issue, which
was, what was the difference between the contract price
and the value of the oil in New York, when the oil
should have been there delivered?

It is further insisted by counsel for appellants, that
the court and commissioner erred in not finding the
price of the oil at the place of production, as stated in
the contract, and the price of transportation to New
York, so as to arrive at the true damages, there being
no market value for said oil in New York on the day of
delivery. It is a sufficient answer, to refer to the fact
that the evidence shows, what the value of the oil was
in New York about the 26th of April, if not on that
precise day. I do not say, that such testimony would
not have been admissible; such testimony is in the
record, and we have weighed it; and yet we do not
think, it should change the result. It might throw some
light, however weak, upon the issue in the cause. It
is also proper, as was done in this cause, to hear evidence
of the market value of the article, both before and after
the day of delivery, if not too remote therefrom to aid Syllabus 9.
in determining, what was the market value of the article
on the day of delivery. *Eaton* v. *Mellus*, 7 Gray 556.

Upon the whole case we see no error in the decree
complained of; and it is affirmed, with costs and dam-
ages according to law; and this cause is remanded to the
circuit court of Wood county to be further proceeded
with.

THE OTHER JUDGES CONCURRED.

DECREE AFFIRMED, CAUSE REMANDED.