# CHARLESTON.

JOHN KIDWELL *v.* NORFOLK & WESTERN RAILWAY CO.

Submitted May 15, 1923.   Decided May 29, 1923.

1. APPEAL AND ERROR—*Verdict for Plaintiff, Supported to any Appreciable Degree, on Question of Negligence, not Disturbed.*

   In a case where the plaintiff's evidence, to any appreciable degree, supports the verdict of a jury on the question of negligence, this court will not disturb the verdict on the ground that no negligence has been shown upon the part of the defendant, and will sustain the lower court in over-ruling a motion to strike out the plaintiff's evidence; and will also sustain the lower court in over-ruling a motion to direct a verdict for the defendant.   (p. 134).

2. EVIDENCE—*"Market Value" of Animal, What It Will Bring in Cash on Market; Sale Price of Animal Within Reasonable Time Shows Market Value.*

   The market value of an animal is what it will bring in cash on the market, and evidence showing what the same

animal sold for, within a reasonable time from the time the market value of said animal is sought to be ascertained, is competent evidence tending to show the market value of said animal, and should be allowed to go to the jury.   (p. 136).

Error to Circuit Court, Mingo County.

Action by John Kidwell against the Norfolk & Western Railway Company.   Judgment for plaintiff, and defendant brings error.

*Reversed and remanded.*

*F. M. Rivinus* and *Paul W. Scott* and *W. K. Cowden,* for plaintiff in error.

*Stafford & Rhodes,* for defendant in error.

McGINNIS, JUDGE:

This case is for damages for the negligent killing of a cow owned by the plaintiff, by the defendant's engine, on the 21st day of August, 1921.   The case was first instituted before a Justice of Mingo County, and a judgment rendered against the defendant for $200.00, and from this judgment an appeal was taken to the Circuit Court of Mingo County, in which court the case was tried by a jury which trial resulted in a verdict and judgment against the defendant for $200.00, to which judgment a writ of error and supersedeas was allowed upon the petition of the defendant.

The facts are that the cow was killed on a public crossing at "Chattaroy" station in said county, by defendant's train known as the "Nangatuck" shifter, consisting of an engine and caboose running west at about 20 or 25 miles an hour.

The point where the cow was killed is near the center of a long 4° curve.   The cow approached the track from the north side, and was struck and killed by the engine just as she got upon the edge of the west bound track.

The proof, upon the part of the plaintiff, upon the question of negligence is substantially: that the cow was killed by the defendant's engine as she was attempting to cross the west bound track, which she approached from the north side of same; that the view looking east from the point where

the cow was struck to the point where the engineer could be seen, was unobstructed for 165 feet; that no stock signals were given, no bell rung, and no decrease in the speed of the train before the cow was struck, apparently, from the evidence of the plaintiff, no attempt was made, upon the part of the defendant's servants, to stop the train and prevent the accident. From these facts uncontradicted, would not a jury be justified in finding that the defendant was negligent, and that reasonable care was not exercised by the defendant's servants in trying to prevent the accident?

We think these facts, if taken alone, would justify the jury in finding the verdict for the plaintiff. The testimony, however, of the defendant's witnesses, if uncontradicted, would clearly absolve the defendant from any negligence whatever.

From the physical facts, as revealed by the photographs filed in the case, there is a curve extending for a considerable distance east and west of the point where the cow was killed; that there are, at this point, two main line tracks and also a spur track which leads off of the east bound main line track from a point east of the station, this spur track ends about opposite the station house at Chattaroy, and apparently takes the same curvature as the main line tracks; and this curve, in railroad parlance, is against the engineer, and in favor of the fireman on a west bound engine. The engineer states that, on account of the curve in the track and by reason of the protruding boiler and machinery, he was unable to see the point where the cow was struck until the engine got within about three rail lengths (99 feet) of the point where the cow was struck. The fireman stated that he was prevented from seeing that point, by reason of some box cars standing on the spur track, until the engine got in about four rail lengths (132 feet) from it, and as soon as he saw the cow, he yelled to the engineer "Cow on the track." The engineer testifies that as soon as the fireman yelled "Cow on the track" he, immediately, put on the brakes in the emergency full force, and did all he could to stop the train and prevent injury to the cow, and that it would not have

been possible to stop the engine at the speed it was running in the distance from the point where the fireman yelled ''Cow on the track'' to the point where the cow was struck.

The contradictory statements made by the witnesses for the plaintinff and the defendant on the question of negligence necessarily, under the law laid down in numerous cases, makes this a question for the jury to pass upon and, therefore, we must say that the lower court did not err in overruling the motion to strike out the plaintiff's evidence; nor did it err in refusing to direct a verdict for the defendant.

The defendant assigns, as error, the giving of the plaintiff's instruction No. 2, which follows:

> ''The court instructs the jury that if they believe from the evidence in this case that the plaintiff's cow was approaching the railroad track of the defendant, and got upon the railroad track of the defendant, and, being there, was struck and killed by a passing train of cars in charge of the defendant's servants, and if they believe from the evidence that the servants of the defendant in charge of the train could by the exercise of reasonable care and precaution after they saw the cow on the railroad track, or could have seen her by the use of reasonable and ordinary diligence, and have avoided killing the said cow, and they failed to use such reasonable care and precaution, the jury should find for the plaintiff.''

This instruction seems to embody the law applicable to this case and the court did not err in giving it to the jury.

The first error assigned by the defendant is that the court erred in sustaining the objection to the question propounded to the plaintiff, on cross-examination, as to what the animal had cost him when purchased; the question was:

> ''Would you mind telling the jury what the cow cost when you bought her?''

This question was objected to by the plaintiff and the objection was sustained by the court. The materiality of the question is apparent. This witness was being cross-examined; he had attempted to testify as to the market value

of this cow, and fixed the market value at $200.00. On cross-examination the defendant should have been given the right to ask this question and have it answered by the witness. The defendant should have been allowed to test the knowledge and reliability of the witness, upon the question of the market value of this cow; but, as to whether or not it was reversable error, we do not here decide, for the reason that the same question is presented, to the court by the defendant, in its second assignment of error, in which the ruling of the court in sustaining the objection to a question asked witness Curry who sold the cow to the plaintiff five or six months before she was killed, is seriously attacked by the defendant. Witness, after having stated that he had once owned the cow, and that he sold her to the plaintiff, that he had bought her from some one else, and sold her to the plaintiff, either on the same day he bought her, or on the day following, was asked:

> "Will you tell the jury what you gave for her and what Mr. Kidwell gave you for her?"

To this question the plaintiff objected and the objection was sustained by the court, and the defendant excepted and by counsel avowed, "That if the witness were permitted to answer the foregoing question he would state that he paid $50.00 for the cow and sold her for $75.00." This witness should have been permitted to answer this question. True his answer would not have been conclusive as to what the market value of the cow was at the time she was killed, yet the fact that this cow had been sold within five or six months from that time, once for $50.00 and once for $75.00, were facts that should have gone to the jury as circumstances tending to show the market value of the cow at the time of the accident.

Judge RITZ, in delivering the opinion of the court in *Starcher* v. *Reese*, 82 W. Va. 778, says:

> "What is the market value of a commodity? The answer is what it will bring in the market. What is the best evidence of market value? The answer must be what it actually sells for."
>
> 94 W. Va.

This cow was purchased by the plaintiff five or six months before she was killed, August 15, 1921, placing the time of his purchase either in the late winter or early spring of 1921. The record does not disclose any reason why the market value of the cow was $200.00. Whether she was a milk cow or not, does not appear from the record, nor is there any reason assigned for this rapid rise in her market value. The price for which property is sold within a reasonable time before the market value is sought to be ascertained, is held to be proper evidence tending to show the market value at the time such value is sought to be ascertained: *Boyd* v. *Gunnison,* 14 W. Va. 2; *Guyandot Valley Ry. Co.* v. *Buskirk,* 57 W. Va. 417; *Johnson* v. *B. & O. Ry. Co.,* 25 W. Va. 570.

The lower court erred in refusing to let this evidence go to the jury.

For the foregoing reasons, the judgment will be reversed, the verdict set aside, and defendant awarded a new trial.

*Reversed and remanded.*