# Wheeling.

## CLARK v. JOHNSTON et al.

Decided December 13, 1879.

(Absent, MOORE, JUDGE.)

It is not sufficient to reverse a decree, that there is error in it; the error must be prejudicial to the appellant, or it will not be reversed on his application.

Appeal from and *supersedeas* to a decree of the circuit court of the county of Ritchie, made on the 12th day of June, 1878, in a cause in said court then pending, wherein S. Edward Clark was plaintiff and Lewis L. Johnston and others were defendants, allowed upon the petition of said Johnston.

Hon. James M. Jackson, judge of the fifth judicial circuit, rendered the decree appealed from.

GREEN, PRESIDENT, furnishes the following statement of the case :

S. Edward Clark, on April 23, 1878, presented to the circuit court of Ritchie county his bill, in which he alleged he was the lessee of the West Virginia Oil and Oil Land Company of certain land in Ritchie county, including lots numbers fifteen and sixteen on Tates run ; and that Lewis L. Johnston, an insolvent, had entered on these lots without the plaintiff's authority, and was trespassing on the same by cutting down timber and boring oil wells on said lots and working the same; that before he

1879
Special Term.

Clark
v.
Johnston *et al.*

sank these wells the plaintiff notified him that the premises belonged to him, and he would be held responsible for trespassing on this land. The notice is filed which, it appears, was addressed to the defendant and to one B. S. Compton, and others not named, who were operating on these lots. It was served only on the defendant on December 27, 1877. The bill alleged that the plaintiff had no means of ascertaining the quantity of oil the defendant had taken from this land, and asks a discovery on oath ; that the defendant Johnston threatens to continue his trespasses in sinking other wells and working the same ; and asks that he may be enjoined from so doing and from removing or disposing of any oil then on the premises, or which thereafter might be produced, and from working these wells or collecting any money for oil already sold ; that a receiver might be appointed till this cause was finally heard, or until the plaintiff was restored to the full enjoyment of his property ; that the defendant might be required to make the discovery asked and to settle for the oil he had appropriated ; and that he be decreed to pay the amount due from him to the plaintiff ; and for general relief.

The bill was sworn to and the injunction asked at once granted.

The defendant, Lewis L. Johnston, filed his answer sworn to May 30, 1878, in which he admits that the plaintiff is the lessee of the lands named, but he says he believes that the plaintiff's title is in some way in litigation with his lessors and other lessees. He then denies that he has either directly or indirectly trespassed on the lands in the bill mentioned, has cut any timber on it, sunk any wells, or caused the same to be worked, or that he has taken any oil from this land, or received any of the proceeds of oil from said land, or that he ever entered on this land ; and he alleges that he does not now and never did set up any claim whatever to the property mentioned in the bill, or any part or portion thereof. He admits that with the plaintiff's leave he did once con-

template sinking wells on these lots, but upon due consideration, owing to the controversy between the plaintiff and his lessor about this lease, he abandoned this project altogether and has never resumed it. This was long before he got the notice from the plaintiff named in the bill; and he denies his insolvency.

This answer was replied to generally; and the plaintiff gave notice that he would ask the judge of the court for the appointment of a receiver, in vacation; and he took the affidavits of sundry persons to be read on this motion. The superintendent of the West Virginia Transportation Company swears that the wells on these lots are known as Johnston, Durell & Co.'s wells. He gives a list of the oil which has been shipped from said wells by this road; and one hundred and seventy and thirty one-hundredth barrels were shipped in the name of Johnston, Durell & Co., on May 8, 1878. B. S. Compton gave the orders for these shipments. The constable who served the injunction swears, that the wells have been worked since the service of the injunction just as they had been before. One witness swears that on the 1st of February, 1878, Johnston spoke to him of these wells and his lease of them, and claimed them as his property. The plaintiff swears that when he had served the notice on Johnston named in the bill, Johnston told him he had commenced sinking one well on these lots, but would desist, and that he had no leave from him to do so. Another witness swears, that Johnston has frequently stated that he owned and controlled these wells, and claimed that they belonged to Johnston & Co., Another witness swears that B. S. Compton and John O'Brien employed him as an engineer of the plaintiff's lessor, and as such he superintended the wells adjoining those on lots numbers fifteen and sixteen, which were pumped by the said engine affiants used; that Johnston frequently claimed the four wells on lots numbers fifteen and sixteen, and that he exercised the right of ownership over the four wells on these lots numbers fifteen

1879
Special Term.

Clark
v.
Johnston *et al.*

and sixteen, giving directions in regard to them, as if they were his own, and supervising the minutia of working them, and affiant supposed they belonged to him, and B. S. Compton directed the affiant to obey said Johnston in reference to these four wells ; that they produced two and a half barrels of oil a day ; that when the oil was shipped, Johnston was present and attended to its shipment, but in whose name it was shipped affiant does not know ; that he knows of about four hundred barrels of oil so shipped from these wells.

Johnston in his affidavit denies the truth of all these statements made in these affidavits, reiterates as true what was stated in his answer ; that on one occasion a rope being fixed on this property so low that he could not conveniently ride under it, he asked one of the affiants why he did not tighten it, which is the ground for alleging his control over these wells. He says that as to shipments of oil being made in the name of Johnston, Durell & Co., if so made, they were so made without his knowledge or consent ; and he says he is one of the directors in the West Virginia Oil & Oil Land Co., lessor of the plaintiff, and that he has been in common with the other directors in the habit of speaking of these four wells and other wells on their lands as our wells, not thereby meaning to assert any ownership of them, but because they were on their lands, and they had royalty in the oil; and he says he supposed the different affiants had been led to believe they were his wells from these statements, and that they were called wells of Johnston & Co. and Johnston, Durell & Co. simply from the fact, he supposes, that he once contemplated sinking such wells; and when sunk the inference was drawn that he had sunk them.

Durell swears, that he has been the shipping agent of the plaintiff 's lessor, and that the shipments of oil from these wells has not been made in Johnston's presence, and he has not directed them. B. S. Compton simply swears, that he has been present when oil was shipped

from these wells, and that Johnston has not been present, and that the wells were not completed till the latter part of January or first part of February, 1878. J. H. Smith swears that he was employed by B. S. Compton to drill these wells, and he paid for them, and that Johnston in no way paid for or managed the putting down of said wells.

On these affidavits, the bill, answer, replication thereto and exhibits, the motion of the plaintiff to appoint a receiver was heard, in vacation, on the 12th day of January, 1878, by consent ; and thereupon the judge ordered that " D. W. Hines be and he is hereby appointed a special receiver on the three or four wells on lots number sixteen and number seventeen and the fixtures thereto belonging, and the oil now pumped and produced therefrom, to take charge of and manage the same until further ordered, proper bond fixed by the court being first given.

From this order the defendant obtained an appeal and *supersedeas*."

*Walter S. Sands,* for appellant, cited the following authorities :

Code, ch. 125, §37; 2 Dan. Ch. Pr. 1410, 1416, 1417; 2 Conn. 396 ; High Receivers, §10 ; *Id.* §555; 3 Edw. Ch. 246 ; 14 Md. 376 ; 7 W. Va. 329 ; *Id.* 223 ; High Receivers, §§24, 741 ; 16 Gratt. 355 ; 2 Tuck. Com. 435 s. p. ; 2 Munf. 290 ; 4 H. & M. 478 ; 6 Munf. 541 ; High Receivers, §8 ; 41 N. Y. 46 ; 12 Md. 364 ; High Receivers, §§7, 145 ; 6 Blackf. 271 ; 13 Iowa 344 ; 2 Woods 62.

*John A. Hutchinson,* for appellee, cited the following authorities :

10 Gratt. 398 ; 7 W. Va. 223 ; 7 Johns. Ch. 315 ; 1 Johns. Ch. 318 ; High Inj. §§468, 472 ; 3 N. J. Eq. 279 and n. A ; 8 Eng. 835 ; 2 Dan. Ch. Pr. (4th ed.) 1631, 1632 ; 4 Gratt. 209 ; 3 Atk. 564 ; High Receivers, §§4,

9, 11; 3 Mac. & G. (49 Eng. Cond. Ch.) 419; 12 Gratt. 74, 83; 1 Hempst. 225; Kerr Receivers, 5; High Receivers, §11; 2 Dan. Ch. (4th ed.) 1631, 1632; High Receivers, §10; 3 Edw. Ch. 246; 14 Ind. 276; High Receivers, §§555, 557; High Inj. §§468, 471; 16 Gratt. 355; 18 Cal. 206; 1 Johns. Ch. 11; 10 Gratt. 398; 1 Bush 463.

GREEN, PRESIDENT, delivered the opinion of the Court:

The counsel in this cause have elaborately discussed a number of questions, which we think it is unnecessary for this Court to consider: As whether, as the bill charges the defendant as a trespasser merely, a receiver could properly be appointed; and whether, the defendant being solvent, the plaintiff had not a full and adequate remedy at law; and whether therefore the court ought not to have refused to appoint a receiver in this cause; whether a receiver should have been appointed in a cause, in which all the equities in the bill are positively denied by the answer; whether the court ought not to have refused to appoint a receiver, because, as is contended, the only equity in the bill is the necessity of a discovery, and the proof of the oil shipped by one of the affidavits, it is insisted, shows that there was really no necessity to call for such discovery; and whether, as the defendant alleges that the affidavits of the plaintiff contradict the bill showing that the defendant claims these wells, and is not a mere trespasser as alleged in the bill, this ought not to have prevented the court from appointing a receiver. And the appellant's counsel insist that the affidavits taken altogether show that the defendant has no interest in these wells, has not claimed any, and has never trespassed on this property, and has really no interest in the oil pumped from said wells, and has never received anything therefrom, and claims nothing; that he never exercised any control over these wells, and has nothing to do with them, and therefore it is insisted that the court had

no authority to appoint a receiver. And that the real object of the bill is to oust B. S. Compton from his possession of this property without making him a party.

It seems to us that there is no necessity or propriety in our considering these numerous questions, which have been elaborately discussed ; for the defendant's answer states emphatically that he does not now, and never did, claim any interest in these wells, or in the oil that has been produced from them ; and therefore it follows as a matter of course he has no kind of interest in the question, whether these wells and the oil that has been produced from them goes into the hands of a receiver or not. If they were utterly destroyed he would, according to his own statement, be in no manner injured. The only question before us for us to decide is, whether there is any error in the order of the judge appointing this receiver injurious to the defendant ; for if the order or decree is not prejudicial to the appellant, it is the universal practice of all courts to affirm the decree, if not complained of by the appellees. We need not consider whether the judge should or should not have made this order ; for though he ought not to have made it, yet if the defendant is not thereby prejudiced or injured, this court, according to its universal practice, will not reverse the decree, if the appellees desire it affirmed; and the appellant admits that he is not injured by this order. If B. S. Compton is injured by this order, he cannot complain at present in this Court, as he is not either an appellant or appellee and is not a party in any form to this suit, nor does the record show he ought to have been made a party. The defendant's answer does not state that he had any interest in the subject-matter of the suit, nor does his affidavit; and the affidavit of B. S. Compton was taken, and he does not show or claim that he has any interest in the matter. The inference which we must draw is, that if he really had any interest in the matter, care was taken both by the defendant and by himself that it should not

appear in the record, apparently that he might not be made a party defendant by order of the court.

The order of the judge therefore, made in vacation, on the 12th day of June, 1878, must be affirmed ; and the appellee must recover of the appellant his costs in this court expended, and $30.00 damages.

JUDGES HAYMOND AND JOHNSON CONCURRED.

DECREE AFFIRMED.