# FALL-SPECIAL TERM.

## CHARLESTON.

HANDY *et al. v.* SCOTT, BAKER & Co. *et al.*

Submitted June 17, 1885.—Decided Nov. 14, 1885.

1. An appellate court will not reverse a decree at the instance of a party not prejudiced by it. (p. 717.)

2. A paper purporting to be an answer copied into the transcript of the record and certified by the clerk as having been filed in the court below after the cause had been set for hearing, but which was not filed by any order of court and is not referred to or recognized in any order or decree entered in the cause, is not a part of the record and will not be considered by the appellate court. (p. 718.)

3. A non-resident party, against whom a decree has been rendered upon order of publication, must proceed in the manner prescribed by the statute for the review of such decree and can not in the first instance appeal therefrom to this Court. (p. 718.)

4. Where questions purely of fact are referred to a commissioner to be reported upon, the findings of the commissioner, while not as conclusive as the verdict of a jury, will be given great weight and should be sustained, unless it plainly appears that they are not warranted by any reasonable view of the evidence. This rule operates with peculiar force in an appellate court, where the findings of the commissioner have been approved and sustained by the decree of the inferior court. (p. 718 )

The facts of the case are sufficiently stated in the opinion of the Court.

D. D. *Johnson* for appellants.

W. S. *Sands* and P. W. *Morris* for appellees.

Snyder, Judge:

Prior to September 13, 1856, Robert Porter had been engaged in the mercantile business carrying on five stores, two in the town of Harrisville and one at Schumla in Ritchie county, one at Hebron in Pleasants county and one at Saltille in the State of Indiana. Before said date he became embarrassed and sold all the goods and merchandise in said several stores except a remnant in one of the stores at Harrisville. On the said 13th day of September, 1856, he made an assignment to J. A. Lowther, Noah Rexroad and Addison Rexroad, trustees, of all the notes, accounts and evidences of debt of every kind due him at said several stores prior to the time he had sold the stores; also the remnant of goods at the Harrisville store, some live stock, farming utensils and household and kitchen furniture, &c., in trust, after paying costs of executing the trust, to pay all the debts due from said Porter in the order following: *First*, all such debts as was then in judgment and execution, and second, all other debts *pro rata*. A schedule of said debts was made a part of the assignment and among others were the following debts: "Scott, Baker & Co., amount, not known, James Kent, Santee & Co., amount not known, assignees of Reed Bros. & Co., amount not known, J. M. Ashton, $106.37," &c. There was nothing on the face of the assignment to indicate the character of any of the debts, or whether or not any of them were judgments or executions.

By two separate deeds of the same date the said Porter conveyed to said trustees a tract of land in Ritchie county and several lots in the town of Harrisville upon the like trust and for the same purposes mentioned in the aforesaid assignment. The assignment and trust-deeds were duly recorded in Ritchie county September 16, 1856.

Soon after said assignment Porter left the State and died insolvent. J. A. Lowther also died intestate.

On December 27, 1867, Henry Handy & Co. instituted their suit in the circuit court of Ritchie county against Scott, Baker & Co. and the other creditors of Porter mentioned in said schedule, the personal representatives of Porter and Lowther, deceased, and Noah and Addison Rexroad surviving trustees of Porter. They filed their bill at January rules, 1868, in which they aver that the notes, accounts and other evidences of debt and all the property mentioned in the aforesaid assignment and deeds were delivered to and passed into the possession of said trustees and that they assumed the execution of said trusts; that the assets of said trust were more than sufficient to pay off all the debts mentioned in said schedule; that in addition thereto there was sufficient to pay off the plaintiffs' judgment for $433.66 recovered by them against Porter, June 19, 1856, in the county court of Ritchie county, and that said trustees realized from said trust assets a sum sufficient to pay off said debts and their judgment; that said trustees have converted said assets to their own use and refuse to pay the plaintiffs' judgment, and they pray that said trustees may be required to discover on oath their transactions relating to said trust and that they may have general relief, &c.

May 21, 1868, an order was made referring the cause to a commissioner to ascertain and report the doings of the trustees and the debts on which payments had been made, &c.

Nothing further was done until January 12, 1872, when an order was entered showing that the plaintiffs moved the court to dismiss the cause, and that Skinner, Ralston & Co., claiming to be creditors of Porter, were admitted as plaintiffs and the cause was ordered to be thereafter proceeded in their names and at their costs.

The next proceeding in the cause was an order made April 23, 1878, showing that the plaintiffs withdrew their motion to dismiss, and leave was given to Skinner, Ralston & Co. to become parties-plaintiffs upon filing a proper petition setting forth their interest in the cause within sixty days.

Upon the special report of the commissioner a rule was awarded by the court, October 28, 1878, against the defendant Noah Rexroad to show cause why he should not be attached for refusing to appear and testify · before the com-

missioner; and on the following day an order was made requiring the said defendant to file a proper answer to the plaintiffs' bill within sixty days and to appear before the commissioner and answer interrogatories in regard to the matters referred to the commissioner.

On April 28, 1879, Noah Rexroad filed his demurrer and answer, and the plaintiffs took time to except or reply thereto. The defendant by his answer, denies that the notes, accounts and evidences of debts mentioned in the assignment of Porter, or any part thereof ever came into possession of himself or his co-trustees; that the trustees when they were informed of the assignment peremptorily refused to have anything to do with the matter, but at the urgent solicitation of Poter and his friends they consented to act so far as to take charge and dispose of the property assigned and conveyed to them other than the notes, accounts and other evidences of debts; that the said Porter then made an arrangement with John C. French, his former clerk and assistant in his business, to take charge of and collect said evidences of debt and account for and pay over the same according to the terms of the said assignment; that said French did take charge of said evidences of debt and collected all that were collectable and paid the same over to Wm. M. Patton sheriff of Ritchie county in satisfaction of executions held by him against Porter, and that no part of said evidences of debts or the proceeds thereof ever came into the hands of the defendant or his co-trustees. The defendant then proceeds to state the manner in which he executed the trust in regard to the property which came into his hands as trustee, he being the only trustee that acted in the matter. He sold all said property including the real estate and realized therefrom less than $1,200.00 as he verily belives, that he paid all of said money to Wm. M. Patton, sheriff, on account of executions which were in his hands against Porter before and at the time the assignment was made and took his receipts for the same and placed them in a trunk in the store of respondant and one Kinney in the town of Harrisville where they remaind until the store was broken open by the soldiers along with the "Jones raid" on May 7, 1863, and said trunk was rifled and said receipts and other papers taken away or distroyed, and he has since been

unable to find any of them or the memoranda of his trust transactions which were also in said trunk and taken or destroyed at the same time. That after this suit was instituted he paid to the plaintiffs, on May 28, 1870, $233.66 and took from their attorney a receipt in full satisfaction of their said claim with an agreement that this suit should be dismissed by the plaintiffs. He avers that he made this payment not because he was liable for anything as trustee, but as he had lost all his vouchers he was advised to do so rather than incur the trouble and expense of litigation and the risk of being able to obtain justice in the absence of his vouchers.

The plaintiffs and defendant Noah Rexroad took many depositions, and on October 29, 1879, the commissioner filed his report which on the motion of the plaintiffs was recommitted with leave to the parties to take further proof. On April 26, 1880, the commissioner filed his second report in which he says : After reviewing the testimony and maturely considering the same, he sees no reasons for changing his former report, and therefore he submits it as his report in the cause. The material parts of said report are as follows :

"Your commissioner further reports that after hearing the evidence in the cause and duly considering the same, he finds—

"First.—That none of the claims mentioned in the assignment made by Robert Porter to the defendants, Addison Rexroad, John A. Lowther and Noah Rexroad, trustees, were ever received by them, or either of them, nor were any of them collected by the said trustees, or either of them, but that said claims were in the possession of John C. French, by whom some were collected, and the proceeds paid over to the then sheriff, William M. Patton, to be applied to executions then in his hands against said Robert Porter.

"There is nothing to show what particular claims were collected nor the amount collected, save that it is in evidence that said French paid to the said Patton about $2.300.00 ; nor can it be shown what claims are still uncollected, as all the papers, books and accounts connected with the estate of said Porter were lost and destroyed during a raid made through this country during the late war.

"Second.—Your commissioner further reports that Noah

Rexroad is the only one of the trustees who received any thing belonging to the estate or transacted any business connected with it, and that said Noah Rexroad received of one Thomas Randall, administrator of H. H. Smith, in whose hands claims belonging to what was known as the Indiana store were placed for collection, $130.57.

"Third.—Your commissioner further reports that the personal property of said Porter that came into the hands of Noah Rexroad, trustee, consisted of two horses, one wagon, some harness, two cows and one heifer, all of which were sold by said trustee, and amounted in the aggregate to $150.00. To whom sold not shown, except one horse for $47.00 to one Hammer.

"Fourth.—Your commissioner further reports as to any thing received by said trustees from other sources than the debts and claims as particularly mentioned in said assignment, that Noah Rexroad received from Dr. M. S. Hall about $135.00, being the amount of a note for $75.00, with its interest, and from Dr. J. M. Lathrop about $135.00, being the amount of a note for $75.00, with its interest.

"Fifth.—Your commissioner further reports that the real estate that came into the hands of said trustee, Noah Rexroad, and by him sold, was as follows : What was known as the Blackshire farm, containing 154 acres, to one Jeremiah Snodgrass for $500.00; lots No. 86, 87 and 88 in the town of Harrisville to Barcus Ayres for $57.40; lot No. 92 to Allen and Catlett for $25.00.

"Sixth.—Your commissioner further reports that all the foregoing amounts mentioned as received by said trustee Noah Rexroad, amounting in the aggregate to $1,366.06, were paid to William M. Patton, then sheriff, to be applied to the numerous executions then in his hands against the said Porter; that the trustee Noah Rexroad paid to Handy & Bro. $233.66, thereby showing that he has paid more for the estate than he received; and your commissioner finds nothing in the hands of the said Noah Rexroad, trustee, and his co-trustees, for distribution."

The plaintiffs and John L. Erringer trustee for Reed Brothers & Co., excepted to said report as follows :

" First.—The commissioner has erred in his finding noted

in his original report as ' 1st,' in that he finds that none of the claims mentioned in the assignment of Robert Porter to Noah Rexroad and others, trustees, were received or collected by them, as the evidence plainly proves that one John C. French took said outstanding claims and collected at least $2,300.00 of said claims, and that he *was in fact* and must be so *regarded in law* as acting for the said Noah Rexroad, trustee, who undertook the execution of said trust.

" Second.—The commissioner erred in his finding noted as '2nd,' in that he charges said Noah Rexroad with having received from the Indiana store only $130.57, the proof being that he received over $700.00, and the commissioner ought to have found accordingly.

" Third.—The commissioner erred in his finding noted ' 3d,' in that he finds that the property therein mentioned, amounting in value to $150.00, was the only property that came to the hands of said Noah Rexroad, trustee. The evidence of Patton shows that he also sold hogs to the value of $30.00, and the other property mentioned in the assignment is not properly accounted for.

" Fourth.—The commissioner erred in his finding noted ' 6th,' in that he finds that the said Noah Rexroad, trustee, had paid over to William M. Patton, sheriff, all the moneys he had collected, as the evidence does not justify the commissioner in arriving at that conclusion.

" Fifth.—The commissioner erred further in his finding noted ' 6th,' in that he finds that there is nothing in the hands of said Rexroad, trustee, for distribution. The evidence shows and the commissioner has found that he received :

| | |
|---|---|
| From real estate . ......... .. .... ` .. ...... | $582 40 |
| And from personal property .. . .. . ... ... ..... | 783 66 |

| | |
|---|---|
| and he should be charged with . . .. .. ... . .... | $1,366 06 |
| the sum collected by French. ... ... | $2,300 06 |

" It is not shown that there were leviable executions unsatisfied in the hands of the sheriff to absorb this fund. Such executions could not be a lien upon the proceeds of the real estate. Rexroad paid to Scott, Baker & Co., $390.92 upon a judgment rendered subsequent to the assignment, and which was certainly no lien and were not beneficiaries under the trust, therefore the commissioner erred in not finding that

the said Noah Rexroad, trustee, was still liable for all the funds shown to have come into his hands, and the hands of French for him, according to the conditions of the trust."

On June 22, 1881, the cause was heard on the bill, former orders, answer of Noah Rexroad, replication thereto, depositions and proofs, the report of the commissioner and the exceptions thereto, and the court entered a decree overruling the exceptions to the commissioner's report and confirming said report and dismissing the plaintiff's bill with costs. From this decree, on the petition of the plaintiffs and said John L. Erringer, trustee &c., an appeal was allowed by a judge of this Court.

We are asked by the appellee, Noah Rexroad, to dismiss this appeal for the reason that neither of the appellants are entitled to prosecute it. The said appellee has filed in the record a receipt signed by an attorney for the plaintiffs for $233.66 "in full of all dues and demands against Robert Porter, deceased, for which there is now pending a suit against N. Rexroad and others, trustees." This receipt is dated May 28, 1870. The appellee proves that he paid the amount mentioned in said receipt through the attorney who brought this suit and the commissioner reports that said payment was in fact made. No attempt was made in the court below to show that said receipt was not genuine or that the attorney who gave it was not duly authorized to do so. Nor was the report of the commissioner excepted to because it reported that such payment had been made to the plaintiffs. It seems to me, therefore, that the plaintiffs have no further interest in this suit and that they have no interest in prosecuting this appeal; they were certainly not prejudiced by the decree appealed from and as to them the decree should be affirmed. *Clarke* v. *Johnson,* 15 W. Va. 804.

As to the only other appellant, John L. Erringer, surviving trustee of Reed Bros. & Co., the record shows that the "assignees of Reed Bros. & Co.," named in the plaintiff's bill as defendants, are non-residents of this State and that they were proceeded against by order of publication, and the orders and decrees entered against them as such without any appearance by them in the circuit court. John L. Erringer, surviving trustee, &c. was not by name made a party to the

bill. There is copied into the transcript of the record a paper purporting to be the answer of John L. Erringer, surviving trustee of Reed Bros. & Co., and a memorandum by the clerk that the same was filed June 19, 1878. But there is no order of the court filing said alleged answer nor any reference to or recognition of it by or in any order or decree in the cause. According to a well settled rule of this Court the said supposed answer can not be regarded as a part of the record or be considered by the Court.—*Park* v. *Petroleum Company*, 25 W. Va. 108; *Hilleary* v. *Johnson*, 11 *Id.* 113.

If it be conceded that the making of the "assignees of Reed Bros. & Co." defendants in the plaintiff's bill, is sufficient to make John L. Erringer trustee for Reed Bros. & Co., a party defendant in this cause, still he must take the same position occupied by the assignees of Reed Bros. & Co. and be therefore treated as a non-resident defendant against whom all the orders and decrees in the cause were entered on order of publication. Being such 'non-resident defendant and having failed to answer or appear in the court below he is not in a situation to appeal from any decree entered in the cause. It is well settled that a non-resident defendant against whom a decree has been rendered upon publication is confined to the remedy prescribed by the statute and that he can not in the first instance appeal from such decree. *Vance* v. *Snyder*, 6 W. Va. 24; *Meadows* v. *Justice, Id.* 198; *Lenows* v. *Lenow*, 8 Grat. 349.

But looking to the merits of this cause the decree dismissing the plaintiff's bill was plainly right. The matters referred to the commissioner to report upon were purely questions of fact dependent upon a large mass of contradictory, parol testimony. In such cases the findings of the commissioner, while not as conclusive as the verdict of a jury, are allowed great weight and must be sustained unless it plainly appears that they are not warranted upon any reasonable view of the evidence. *Boyd & Co.* v. *Gunnison*, 14 W. Va. 1–19, and cases cited; *Graham* v. *Graham*, 21 *Id.* 698.

This rule operates with peculiar force in the appellate court where the report of the findings of the commissioner has been approved and sustained by the lower court. In this

cause the report was re-committed on the motion of the plaintiffs in order that they might take further testimony. They took no further testimony and the commissioner after reviewing the testimony before taken and maturely considering the same found no reason to alter his former findings. After all this had been done the court overruled the exceptions to the report and confirmed the same. I have carefully examined all the evidence on which the comissioner founds his report and while it is contradictory in some particulars in my opinion the findings of the commissioner are fully sustained by the great preponderance of the evidence. But if the true result of the evidence were doubtful, this Court would not reverse the decree sustaining the report. It is not the province of the appellate court to review masses of contradictory testimony, upon which any conclusion must be to a great extent unsatisfactory and conjectural, for the purpose of reversing a decree of the interior court sustaining the report of a commissioner based upon such testimony. If conjectures as to the result of parol testimony have to be made in order to dispose of the case, they should be made by the commissioner and the court below, and when made they should not be disturbed by the appellate court which has not the same opportunities for weighing such testimony. It is only when the report and the decree are plainly against the evidence that the appellate court can interfere in such case.

For the foregoing reasons, I am of opinion that the decree of the circuit court should be affirmed.

Affirmed