# WHEELING.

## Roots v. Kilbreth.

### (English, Judge, absent.)

Submitted June 26, 1889.—Decided June 28, 1889.

1. Appellate Court—Commissioner of Court—Circuit Court.

   Where questions of fact are referred to and passed upon by a commissioner, and the findings of the commissioner are overruled and disaffirmed by the Circuit Court, the appellate court must determine for itself from the facts and circumstances disclosed by the record, whether it will sustain the conclusion of the commissioner or that of the Circuit Court.

2. Appellate Court—Commissioner of Court--Circuit Court.

   A case, in which the appellate court upon the facts and evidence sustained the action of the Circuit Court in overruling the findings of the commissioner and in sustaining exceptions taken to the commissioner's report.

*Gunn & Gibbons* for appellants.

*Knight & Couch* and *Simpson & Howard* for appellees.

Snyder, President :

At the March rules, 1884, the individuals composing the firm of Roots & Co. commenced this suit in the Circuit Court of Mason county against the Mason City Salt & Mining Company and G. Y. Roots and James P. Kilbreth composing the firm of Roots & Kilbreth and others to enforce the sale of certain real estate in said county, conveyed by said salt and mining company to a trustee to secure the payment of 140 coupon bonds of $500.00 each, and to distribute the proceeds among the owners of said bonds.

The bill alleged that eighty of said bonds, amounting to $40,000.00, were held by Roots & Co. as collateral security for the indebtedness of Roots & Kilbreth to said Roots & Co., which indebtedness the plaintiffs alleged was $23,568.93, and that the other sixty of said bonds were held as follows: G. Y. Roots, thirty, James P. Kilbreth, twenty, and M. M. White, ten, of said bonds.

James P. Kilbreth answered the bill denying, that the firm of Roots & Kilbreth was indebted to Roots & Co. in the sum alleged or in any sum, and by way of affirmative relief prayed, that an account be ordered to state and settle the accounts between the firms of Roots & Co. and Roots & Kilbreth. Kilbreth also pleaded usury and the statute of limitations in respect to the alleged indebtedness of Roots & Kilbreth to Roots & Co.

The trust-subject was sold, and the sale confirmed without objection, at the price of $12,500.00, of which sum it was ascertained, that about $6,800.00 would be applicable to the eighty bonds of Roots & Kilbreth held by Roots & Co. as collateral security. The cause was referred to a commissioner to ascertain the holders of said coupon-bonds and to settle the accounts between the firms of Roots & Kilbreth and Roots & Co. and to report, in whose favor the balance exists. On the coming in of said report the court without adjudicating the true state of accounts between Roots & Kilbreth and Roots & Co. decided, that the evidence in the cause showed, that the indebtedness of the former to the latter firm was of such an amount as to entitle Roots & Co. to the said $6,800.-00—the proceeds of the sale applicable to the payment of said eighty bonds held by Roots & Co. as collateral for said indebtedness—and entered a decree directing the payment of said proceeds to Root & Co. without prejudice to the right of either of said firms to bring a new suit to settle and ascertain the true state of accounts between them.

From this decree the defendant Kilbreth brought the cause by appeal to this Court. On the hearing here this Court, being of opinion that the Circuit Court before directing said $6,800.00 to be paid to Roots & Co., should have investigated the accounts between Roots & Kilbreth and Roots & Co. and finally determined, whether there was any indebtedness by either of said firms to the other, reversed so much of the said decree of the Circuit Court, as decided, that Roots & Kilbreth are indebted to Roots & Co. in a sum equal to the proceeds of the sale applicable to the payment of the collaterals held by Roots & Co., and ordered said sum to be paid to Roots & Co. and remanded the cause to the Circuit Court for further proceedings there to be had in accordance with

the principles announced in the opinion filed by this Court. *Roots* v. *Salt & Mining Co.,* 27 W. Va. 483.

After the mandate of this Court had been entered in the Circuit Court, that court made an order referring the same to a commissioner to settle the accounts between the firms of Roots & Kilbreth and Roots & Co. The commissioner made a report, which was excepted to by Roots & Co., and the same was recommitted to the commissioner. The defendant Kilbreth, by leave of the court, filed a cross-bill, to which Roots & Co. filed their answer.

From August, 1872, to about October, 1875, G. Y. Roots and James P. Kilbreth were the joint owners of the coal and salt property in Mason county, which was in 1875 conveyed to the Mason City Salt & Mining Company; and they as partners under the name of Roots & Kilbreth carried on with said property the business of mining coal and manufacturing and selling salt. During the same time Roots & Co., a partnership, of which G. Y. Roots was the owner of a seven tenths interest, was conducting a commission-business in Cincinnati, Ohio, and the business of both of said firms was for the greater portion of said time under the management of said Roots, and especially was such the case in respect to the firm of Roots & Kilbreth. Roots & Co. acted as the factors or agents of Roots & Kilbreth for selling salt and furnishing supplies; and, while the latter was in active operation, Roots & Co. rendered itemized accounts to it semi-annually; and, after its dissolution, Roots & Co. rendered to it sundry accounts or statements, making in all twenty two in number. These accounts show, that no supplies were furnished by Roots & Co. after December, 1875, and the last credit for salt sold was given in 1876. In these accounts Roots & Co. charge Roots & Kilbreth interest at the rate of ten *per cent.* upon advances made according to an agreement made by G. Y. Roots acting for the firm of Roots & Kilbreth, of which Kilbreth was fully informed, and to which he made no objection at the time.

Kilbreth in his cross-bill charges, that said accounts rendered by Roots & Co. to Roots & Kilbreth are usurious; that they contain overcharges of commissions on salt sold by or through them; that clerical errors appear upon their face; that

they fail to credit Roots & Kilbreth with the proceeds of eight coupon-bonds of $500.00 each, which ought to be credited; and that by reason of other errors in said accounts the firm of Roots & Kilbreth instead of being indebted to Roots & Co. in the sum of $23,568.93, or any other sum, are the creditors of Roots & Co. for a large amount of money. He then avers, that he had not until recently discovered the said errors and omissions in said account.

After the Circuit Court had decided the cause in May, 1875, and before the appeal was taken from that decree, the commissioners, who made the sale of the trust-property, paid over to Roots & Co. $6,774.77, being the portion of the proceeds of the sale applicable to the eighty bonds held by Roots & Co. as collaterals. The commissioner after considering the depositions and documentary evidence filed in the cause reformed and re-stated the accounts between Roots & Kilbreth and Roots & Co., and reported in lieu of the alleged balance of $23,568.93 in favor of Roots & Co., that said firm was indebted to Roots & Kilbreth, as of February 6, 1888, in the sum of $7,577.10, and that in addition thereto Roots & Kilbreth were entitled to the $6,774.77, proceeds of the sale paid over to Roots & Co. as aforesaid, with the interest thereon, making the aggregate indebtedness of Roots & Co. to Roots & Kilbreth, as of that date, $15,572.50.

To this report Kilbreth filed two, and Roots & Co. eight, exceptions. The court sustained one of the exceptions of Kilbreth and two of those of Roots & Co., and overruled all the others. After correcting and reforming the report, so as to make it conform to these rulings, it was found that Roots & Co. was indebted to Roots & Kilbreth, as of May 18, 1888, the date of the decree, in the sum of $2,773.04; and for this and the costs of this suit the court entered its final decree in favor of Roots & Kilbreth against Roots & Co.

From this decree the defendant Kilbreth has obtained this appeal.

As the real controversy on this appeal is confined to the action of the court in sustaining the third and fourth exceptions of Roots & Co. to the report of the commissioner, and in modifying said report and decreeing accordingly, it is unnecessary to consider any part of the record not bearing upon the questions presented by these exceptions.

The first of these exceptions so sustained is taken to the action of the commissioner in opening and striking from the stated accounts rendered by Roots & Co. to Roots & Kilbreth certain alleged overcharges of commissions on salt sold by Roots & Co. for Roots & Kilbreth, and charged by Roots & Co. in said stated accounts. The evidence in the record shows, that, when Roots & Co. were engaged to act as the factors of Roots & Kilbreth in selling salt, purchasing supplies and making advances in money for said purchases, Roots as the managing partner of Roots & Kilbreth agreed to pay Roots & Co. twenty five cents commission per large barrel, and twenty cents per small barrel, for salt sold directly by Roots & Co., and one half this commission on salt placed by them for sale in the hands of sub-agents, Roots & Co. guarantying all sales. Subsequently, the salt-business becoming depressed, Roots prevailed on Roots & Co. to reduce these commissions to twenty and fifteen cents per barrel, the sales still being guarantied, and finally the commission was reduced to five cents per barrel without guaranty. The commissioner found, that the quantity of salt sold by sub-agents of Roots & Co. was 61,759 barrels, on which the one half commissions amounted to $6,084.77; and this being in the opinion of the commissioner an unreasonable charge, he reduced it to $1,852.77, or three cents per barrel, making a difference of $4,232.00 against Roots & Co. No deduction is made in the report on the commissions charged by Roots & Co. for salt sold by them direct; and the reason given for disallowing the commissions to Roots & Co. for the salt sold by their sub-agents is, that these commissions are in addition to the commissions charged by the sub-agents, thus subjecting the salt so sold to double commissions, a charge, which in the opinion of the commissioner ought not to be allowed in the absence of a contract authorizing it. I have been unable to find from the evidence in the record, that double commissions have been charged on any of the salt. The charge by Roots & Co. on salt sold by their agents is just one half of that charged on the salt sold directly by themselves; and the evidence shows, that Roots & Co. divided the commissions with the sub-agents on the salt sold by the latter, thereby making the entire commissions on the sales

made by the sub-agents no greater than that sold directly by Roots & Co. under their contract with Roots & Kilbreth.

The commissioner, however holds, that the alleged contract between Roots & Kilbreth and Roots & Co. in respect to these commissions is invalid, because made by G. Y. Roots, who had a greater interest in the firm of Roots & Co. than he had in the firm of Roots & Kilbreth. The position would no doubt be correct if such contract had been made and enforced without the consent or acquiescence of Kilbreth, but the evidence shows, that Roots at the instance of Kilbreth was made the active manager of the business of the firm of Roots & Kilbreth, and that Kilbreth knew all about this contract and the commissions, which were being charged by Roots & Co., and he never made any protest or objection thereto, until long after the partnership had ceased to do business. The only excuse given now by Kilbreth for not objecting to these charges is, that the accounts rendered to him by Roots and Roots & Co. were so indefinite, that he did not discover, until recently what commissions were charged.

It is clearly shown, that Kilbreth is a skillful accountant and fully competent to unravel and understand accounts, such as were from time to time furnished him by Roots & Co. These commissions were charged on these accounts in such a manner, that a simple calculation from the *data* given would disclose the amounts of the commissions. If however such had not been the case, the accounts certainly showed, that Roots & Co. were charging commissions on salt sold by sub-agents, and Kilbreth had the means before him to inform himself either by inquiry or calculation, and determine the rate of these commissions, and whether or not they exceeded the rates he had assented to. He had all the *data* then, that we have before us now; and, if he could not discover then, that there were double commissions, which in the aggregate exceeded those charged on salt sold directly by Roots & Co., we are at a loss to know why it is expected we should, without any more detailed statements of the accounts, be able to discover, that double or excessive commissions had been. charged. As before stated, we are wholly unable to find in the record before us, that the aggre-

gate commissions of Roots & Co. and their sub-agents on the salt sold by the latter in any case exceeded the charges made by Roots & Co. on sales made directly by them; and as the commissioner allowed those latter charges, and no exception was taken to the report by Kilbreth on that account, we think the commissioner should not have reduced the commission on the salt sold by the sub-agents, and that the Circuit Court properly sustained the said third exception of Roots & Co. to the report.

The second exception so sustained, which is the fourth exception of Roots & Co. to the commissioner's report, relates to a charge against Roots & Co. of four coupon-bonds of $500.00 each. Of the 140 coupon-bonds issued, as before stated by the Mason City Salt & Mining Company, thirty were from time to time delivered to Kilbreth to be disposed of by him, the proceeds to be applied to the indebtedness of Roots & Kilbreth to Roots & Co., and a like number of the bonds were to be disposed of by G. Y. Roots for the same purpose. Roots & Co. contend that four of these thirty bonds delivered to Kilbreth were never paid for, and Kilbreth contends, that he did pay for these bonds at the time he got them. The commissioner decided from the evidence, that Kilbreth paid for the bonds and charged their proceeds to Roots & Co., while the Circuit Court sustained the exception of Roots & Co. to the said charge and decided, that the bonds had not been paid for and refused to charge them to Roots & Co.

The question here presented is one of fact, about which the commissioner and the Circuit Court have differed. The rule is well settled in this State, that, when questions of fact are passed upon by a commissioner, and his findings thereon are approved and confirmed by the Circuit Court, the appellate court will regard those findings in the nature of a verdict of a jury and will not reverse them, unless it plainly appears, that they are not warranted by any reasonable view of the evidence. *Handy* v. *Scott*, 26 W. Va. 710; *Boyd* v. *Gunnison*, 14 W. Va. 19. This rule however can have no application in a case such as the one before us, in which the findings of the commissioner have been overruled and disaffirmed by the Circuit Court. In such case the appellate

court must determine for itself from the facts and circumstances disclosed by the record, whether it will sustain the conclusion of the commissioner or that of the Circuit Court.

At the time these bonds were being delivered to Kilbreth by G. Y. Roots, acting for Roots & Co., who held all the bonds as collateral security, Roots kept a memorandum-book, in which he entered at the time of each delivery the numbers of the bonds delivered to Kilbreth and the amount of the proceeds thereof to be credited for same. This memorandum, which appears in the record, shows, that five bonds were delivered and paid for on February 23, 1876, five delivered and paid for March 14, 1876, and then follows this entry : "Also (4) bonds, Nos. 117, 118, 119, 120. Have not received proceeds of these 4 bonds." Following this are five entriess showing that sixteen other bonds had been delivered to Kilbreth and paid for by him between October 28, 1876, and October 1, 1878. The books of Roots & Co. also show, that, while thirty bonds were delivered to Kilbreth, he is credited with the payment of only twenty six. The credit opposite the four bonds in dispute is left blank; and, during the time these bonds were being delivered to Kilbreth, Roots and Roots & Co. credited Roots & Kilbreth with the proceeds received for them, and at stated times, soon after each credit, sent accounts to Kilbreth showing the dates of credits and the amounts of the bonds credited; and on none of these accounts is there any credit for the proceeds of these four bonds, though they show credits for the proceeds of all the other twenty six bonds.

With these accounts before Kilbreth for years before this suit was brought, and until after it had been once decided in the Circuit Court and by this Court on appeal, he made no claim, that he had not been credited with all he was entitled to on account of the bonds delivered to him. It seems to me, that the memorandum shows conclusively, that he did not pay for these four bonds, at the time they were delivered to him, and the circumstances tend strongly to show, that he never afterwards paid for them. But, as he admits, that he received the bonds, the burden was on him to show, that he paid for them. G. Y. Roots testifies, that said bonds were never paid for, and his testimony is supported by Stegemeyer,

the book-keeper of Roots & Co. Kilberth testifies, that he paid for these four bonds, at the time he got them, but he is unable to state to whom he made the payment, or how he paid it,—whether by draft, check, or in currency; and, when asked on cross-examination to examine his bank-account in the banks, in which he did business about that time, he contents himself with answering, that he can not do that within a reasonable time, and makes no attempt to do so; nor did he offer to search for or make any effort to produce from any source any entry or memorandum tending to show, that he had paid for said bonds. It seems to me almost impossible, that a man living in a city, keeping a bank account and transacting business in a city and a good accountant having the precise date of the payment of $2,000.00 could not find, either in the banks, where he did business, or among his private papers some entry or memorandum in reference to such payment, if he ever made it. The indifference of Kilbreth and his absolute failure to produce any such entry or memorandum or any explanation of such failure is very potent evidence to my mind, that no such payment was ever made by him. But, as before stated, the burden was on him to prove the payment; and in my opinion, taking all the evidence into consideration, he has not only failed to establish the payment, but the weight of the evidence as well as the surrounding facts and circumstances tend strongly to show affirmatively, that the payment was never made.

I therefore think, that the Circuit Court did not err in sustaining the said third exception of Roots & Co. to the report of the commissioner.

The appellees, Roots & Co., claim and assign as error the refusal of the court to sustain their exception to the commissioner's report, whereby they were denied interest at ten per cent. on the advances made by them to Roots & Kilbreth according to contract. They claim that the contract was made and was to be performed in Ohio, and that in that state parties are allowed to contract in writing for the payment of interest at a greater rate than six per cent., and that such contract is not usurious.

The difficulty in sustaining this claim is, that the evidence fails to show that there was any contract in writing author-

izing Roots & Co. to charge interest at the rate of ten *per cent.* G. Y. Roots, the party, who made the contract, testifies, that it was a verbal contract. The only pretence of any writing to that effect is, that, after the accounts of Roots & Co. had been rendered to Roots & Kilbreth, in which interest on advances had been charged at ten *per cent.*, Kilbreth, one of the members of the firm of Roots & Kilbreth, wrote a letter to Roots & Co., in which he says, that they (Roots & Co.) have been getting a liberal interest, of which he makes no complaint. If this letter had been written by the firm instead of by one of its members, it would not constitute a contract for the payment of ten *per cent.* interest. It was a mere recognition of the fact, that such interest had been charged without objection, but it contained no agreement or promise to pay such interest; and even if it had, being made after the interest had accrued and not in respect to interest to accrue thereafter it is very questionable, if it could be considered as binding. Clearly, this was no such written contract, as would under the Ohio statute defeat the plea of usury filed in this cause by Kilbreth.

For the reasons aforesaid I am of opinion, that the decree of the Circuit Court should be affirmed.

AFFIRMED.